All right, the panel will now hear its final case of this morning. Nosewicz v. Janosko, number 20-1287. I don't see Mr. Springer yet on screen, however. Judge, I've sent a request for him to please turn on his mic and camera. All right, we look forward to that with great anticipation. There he is. All right, Mr. Springer, I've called the case and we're ready to hear your argument. Thank you very much. I was just having some technical problems. No problem, we're all set. This is, I represent the plaintiff, Appellant John Edward Nosewicz. This is a 1983 excessive force claim. It was tried in the District Court of the District of Colorado and the jury entered a verdict in, a return to verdict in favor of the defendant and judgment was entered on that verdict. And by this appeal, we seek to have the judgment reversed and the case remanded for a new trial. Our appeal is based on two grounds. First, that the verdict was affected by perjury and second, that the verdict is against the weight of the evidence. I'd like to go right to the weight of the evidence argument, if I may. The verdict is against the weight of the evidence because defendant Janosko testified that the reason that he applied an armbar takedown on Mr. Nosewicz and took him to the ground was that he was concerned that he was going to be hit. This was the only justification for his use of force that he presented at trial. And that testimony that he was concerned about being hit is demonstrably false because it was not contained or mentioned in his incident report. So Mr. Springer, let me ask you this. That's a credibility issue that you had at trial. I assume that you impeached using that information. Is that correct? Yes. Mr. Janosko was asked if he mentioned that he was concerned about being hit in his incident report, and he said that he had not. And he said no, right? Yes, without giving any explanation. Okay, then tell me what happened then. I mean, describe your examination for me because what I'm seeing here is an explainable omission that the jury could or could not choose to believe. And if that's the case, I don't think you have a sufficiency claim. Did your examination bring out more? No, it did not. But my position on this incident report is that Janosko testified that the report was the formal documentation of what happened. He used the report to refute the testimony of Sergeant Hanna, wherein he said that Janosko told him that Mr. Nazowitz had balled up his fist and taken a step toward him. And Janosko denied making that statement, even though it was exculpatory. And he said that if he had made that statement to Sergeant Hanna, it would have been in his report. His report was the formal documentation. And by that, he meant to say that the report was gospel. It was sacrosanct. If something isn't in the report, a material fact is not in the report, then it didn't happen. And Janosko's counsel went as far as getting Sergeant Hanna to admit that the report is formal documentation, as opposed to what Janosko stated to him verbally. So our position is that the report is gospel. And if the report proved, as Janosko claimed, that he did not make the balled up fist statement because it wasn't in the report, for the same reason the report proves that he was not concerned about being hit, because that wasn't in the report either. The report really is the Rosetta Stone of the case. It's not just an ordinary report, but it's, according to Janosko, the gospel. It's the formal documentation of what happened. Counsel, why isn't that just within the province of the jury, though, to decide whether they believe that Mr. Janosko's recollection is accurate, or whether they believe that Officer Hanna's recollection was accurate? Why does that have to be anything else other the jury's determination as to, you know, maybe not even credibility, maybe just whether they're recollecting it accurately? But in this case, Janosko was benefited regardless of whether he gave false testimony on this matter or Sergeant Hanna did. He was benefited either way, because if he falsely denied making the statement, then he was benefited because he avoided being impeached with his report. On the other hand, if Janosko, if Sergeant Hanna testified falsely when he attributed the statement to Janosko, Janosko was also benefited because the statement was entirely exculpatory. And apparently the jury relied on that statement because it was the only evidence that supported Janosko's claim of self-defense. He did not articulate in his testimony any basis that would have given him an objectively reasonable belief that he was in imminent danger and that he needed to apply force to Mr. Nasiewicz. It came down to the balled-up fist statement. That was the only evidence that was presented and it was necessarily false because Janosko testified that he did not make that statement and that Mr. Nasiewicz, in fact, did not ball up his fists. I thought there was testimony. I thought there was testimony that he, first of all, that Mr. Nasiewicz was creating a disturbance. He was screaming. He was refusing to leave the cell. And so Officer Janosko enters the cell and he tries to get him out of the cell to a, he wants to get him to a, you know, to a cell where it's quieter because this is in the middle of the night essentially. And he then, your defendant pulls his arm away and tries to turn in a confrontational manner according to Officer Janosko. He tries to turn and face Officer Janosko instead of being essentially pushed out of the cell. And that his, one of his arms, his left arm, was also free. So, I mean, there is some, definitely some reason for Officer Janosko in attempting to escort your client out of his cell. There's some reason for him to believe that he is acting confrontationally and resisting his efforts. And that's what he testified. Why couldn't the jury have relied on that? Well, because Officer Janosko testified that the reason that he applied force because he was concerned that he was going to be hit. He didn't say that he applied force because Mr. Nasiewicz turned around and faced him. He didn't say that. He said he applied force because he was afraid and concerned that he was going to be hit. Based on the confrontational stance, that was the evidence that that was his testimony. Based on the confrontational stance and position that he was taking. That's not what he said in his testimony. He didn't mention anything about confrontational stance. He just said that Mr. Nasiewicz turned around and his left arm was free. And for that reason, he decided to use an armbar takedown. My position is that does not provide an objectively reasonable basis to use force. It took more than that. And there was evidence presented by Officer Hanna that Janosko told him that his fists were balled up. Yet we know that's not true because Janosko denied it. And being a party to the case. We don't know that's not true. That's up to the jury to decide whether that's true or not. Which person to believe. Janosko said that Mr. Nasiewicz did not ball up his fists. I understand, but the jury had to decide whether his recollection or Officer Hanna's recollection was accurate. Well, that's true. But I'm just pointing out that Mr. Nasiewicz had not in fact balled up his fists because Deputy Janosko testified that he had not. I need to stop you there and just clarify one thing. Yes. Isn't the conflict between Officer Janosko and Sergeant Hanna a matter of what Mr. Janosko told Sergeant Hanna? Isn't that the conflict? Yes. All right. And isn't that different from Officer Janosko saying whether Mr. Nasiewicz balled up his fists and stepped toward him in terms of what actually happened at the jail as opposed to what he told Sergeant Hanna after the incident? Do you understand the distinction? It seems to me that what you're saying is these two individuals, Officer Janosko and Sergeant Hanna, told something different about a conversation that happened between the two of them. Isn't that what we're talking about here? Well, yes. All right. And if that's the case, wasn't that conflict presented to the jury in one form or another and then they could make up their own minds about it? Yes. All right. And if that's true, then why isn't it reasonable for the jury to make a credibility determination or maybe they could just decided that, well, one of the two versions of the conversation maybe isn't correct, but that doesn't mean that either one is intentionally lying about it. Well, I think it does. How do you get that? I mean, people see things differently all the time and what they say may not be true, but it's not the case. Well, I think in this case, the statement was so simple and straightforward that one of them was giving false testimony about that. But I want to emphasize- Intentionally false testimony. Yes. And a reasonable jury couldn't decide otherwise. Is that what you're saying? Yes, exactly. All right. I understand your argument. Okay. But I want to go back to the evidence argument. That is not dependent on whether or not either Janosko or Sergeant Hanna was lying. The verdict is against the weight of the evidence because there was no evidence showing that Officer Janosko had an objectively reasonable basis to use force and his testimony that he was concerned is demonstrably false. I see that my time is limited. I'd like to end my argument now with the court's permission and reserve the balance for rebuttal. Thank you, counsel. We'll hear from Ms. Kloster. Thank you, Your Honor. Good morning. May it please the court. My name is Marnie Kloster and I represent the defendant in this case, Jeffrey Janosko. Simply put, there are five key reasons why Mr. Nosewitz received a full and fair trial and the impartial jury verdict, which the jury did exactly what it was tasked with doing, should stand. First, there can be no legitimate claim of surprise. They knew full well what Sergeant Hanna and Deputy Janosko's testimony was going to be as a result of deposition testimony and the report, which they had years before the trial. They even admit in their opening brief that they called Sergeant Hanna for the express purpose of raising inconsistencies and using it in an attempt to impeach the credibility of my client. Second, any issue was entirely self-inflicted. Mr. Nosewitz and his attorneys admittedly made this tactical decision to call both Sergeant Hanna and Deputy Janosko during their case in chief. And they did so specifically to elicit these inconsistencies. And they had full cross-examination on them. So if they don't like the result, then it is because of their own making. The jury was fully apprised of these issues through their cross-examination. And as this court has already noted during oral argument, truth and credibility determinations are the province of the jury. And they did exactly what they were tasked with doing, which was listening to all the evidence, including this cross-examination. And they still rendered a verdict in favor of my client. Third, no matter... Ms. Closter, let me ask you a question. So it sounds from Mr. Springer's argument that his position, at least in part, is that he very thoroughly impeached your witnesses in such a way that no jury could reasonably rely on their testimony. And therefore, because of that, there's insufficient evidence. I mean, could you address... If that is in fact his argument, could you address that? Sure, Your Honor. As this court knows, right, to issue a new trial because it's against the weight of the evidence, the verdict must stand unless it's clearly, decidedly, or overwhelmingly against the weight of the evidence. That's a pretty significantly high standard. And we contend that there's just simply no merit to that claim. The jury, as you all have mentioned, right, is the arbiter of credibility determinations. And here there were ample items for them to consider and rely on in reaching their determination, setting aside, right, whether the bald fists occurred or didn't occur. So as... Officer Janosko's subjective testimony also isn't really relevant to that reasonableness determination. Setting aside that as well. So Mr. Nosowitz admitted that he was agitated in his deposition and then had to be impeached with that testimony at trial. He admitted in his deposition that he was yelling at the top of his lungs at the time of the interaction. And there was testimony about how that, given the time of day and the fact that people were going to be waking up and exiting their cells, created a disturbance that's an impact for jail operations. There was testimony and evidence that he refused lawful commands associated with the exiting of his cell. There was testimony that he pulled away from Deputy Janosko and that at that point, there's video showing Mr. Nosowitz in the doorway blocking Deputy Janosko into a cell. So let me stop you there. Let me stop you there. So the items that you've just listed off, is it fair to say that those facts are undisputed? I think there's no way they can be in dispute because we have either video or deposition testimony, at least as to everything but the lawful commands. Because Mr. Nosowitz tried to, well, I should say he was inconsistent in his testimony about that. But all of the others, yes. And then we have additional testimony, right? That Mr. Nosowitz turned on Deputy Janosko with one arm free. And even if you set aside that Deputy Janosko felt that that created a subjective concern, there's still the objective impression that when a person in jail, right? Who's irate and yelling and unreasonable, turns on you with a hand free, right? Something improper could happen when you're blocked in the cell, right? Regardless of what you feel might happen, that is a legitimate item to be mindful of. That is why they're using those techniques. So let me talk to you about your argument about objectivity right there. So did you put on evidence that from a reasonable officer's perspective or a reasonable guard's perspective that when someone turns on them in that way, that they could credibly fear that the person was going to hit them? Did either of your officers testify that in their experience that that created concern? I don't recall specifically whether Sergeant Hanna or Deputy Janosko discussed it from a reasonable officer perspective. We were limited by the district court in some of the testimony we were permitted to put on through Sergeant Hanna. But there was, as I recall, Kenny Sherman, who was a use of force and policy related expert associated with the jail who testified. And I'd look back at the record, but there may have been testimony from him as to the objective standard. Which is specifically, I think, where Judge Carson is going is to the takedown procedure, because that's the ultimate issue, was the takedown. The ultimate issue isn't were they reasonably concerned about his actions. It's whether their use of force or Officer Janosko in particular's use of force, because the other officer wasn't there, was reasonable. And what was the testimony about when an officer can use this fairly extreme procedure of this takedown? Well, there was testimony that this was in compliance with the county's policy under the circumstances. And in the use of force procedures for the county, this is actually at the lowest end of the use of force. And by the time Deputy Janosko has used this, he's attempted verbal compliance by trying to calm the situation down the same way he had done the night before with the plaintiff. And then he is asked for lawful commands to exit the cell, which have been ignored. He has then entered the cell in order to gently place a firm hand on the plaintiff's head to physically escort him out. So each step in the process, he's moving slowly up the chain of the use of force. And it's only when he is now blocked in the cell with an irate, screaming individual who is turned on him. And the video shows that. The video shows Mr. Nozowitz's back exiting the cell and his front facing inside the cell with Deputy Janosko in there. So regardless of whether Mr. Nozowitz wanted to admit that in trial, that can be seen on the video. And all of that provides a clear and ample basis for the jury to find in favor of the defendant, regardless of whether there's bald fists, regardless of did he step forward or was he just facing him, regardless of Deputy Janosko's fear or belief. Those are all objective factors that support the use of force. Well, one objective factor, isn't it? Or wouldn't one objective factor be the injuries that Mr. Nozowitz suffered? Why wasn't the evidence of those injuries enough to find excessive force under the second Kingsley factor? Well, I think there's potentially several reasons. First, it is unclear where, you know, the most notable, the, you know, broken rib issue occurred because Mr. Nozowitz claimed that Thornton during the arrest actually injured his ribs and broke them. So it's unclear whether or not it was even caused by my client. But, you know, in my opinion, even lesser force I've seen in some circumstances can cause injury. And so if the standard were always the injury to the plaintiff, then, you know, individuals when they're getting taken down to the ground or they're in a scuffle with police are going to, you know, injure themselves, right, to support their claim. So there was also testimony that Mr. Nozowitz has had previous broken ribs. So there's a question of whether his ribs were already more delicate to begin with and that even less force could have still caused that injury. So I think it's very fair that a jury could have either attributed the force itself was excessive. Well, tell me about the testimony that the injury occurred during his arrest. Can you just give me a synopsis of that testimony? Sure. The testimony by Mr. Nozowitz was essentially that he was ripped from his home. His oxygen was ripped off. He was slammed to the ground. He was injured. And his testimony was internally inconsistent at various times about what injuries occurred when both with respect to Thornton and my client. But at one point, he did indicate that, you know, he thought they had damaged either his ribs and he had back pain and he had other injuries as a result of being thrown on the ground in a very violent manner by the Thornton police Okay. So your position is that based on that testimony, the jury could have attributed his injuries to that and not to the takedown that's at issue in this case. Correct. I think that's certainly a possibility and within their province. In addition to the reasons I've already noted why this jury verdict should stand, no matter how many opposing counsel indicates in his brief or how many adjectives he uses, the district court correctly explained why there's no perjury or false testimony. Sergeant Hannah, in my mind, is not a material witness. He did not personally witness these events as the court has already noted, right? It's essentially hearsay that he hears. There are reasons why, you know, being a human and having his deposition years after the event and trial, years after that, that his memory may not be entirely clear or accurate that he could have misheard or misunderstood or that he could have been conflating to events as a supervisor, right? Because this is the type of conduct that he looks into as a supervisor. So there is no evidence of false or perjured testimony. Fourth, even excluding the testimony that we've talked about that's of concern, as we've just discussed, there is ample evidence to support the jury verdict. And fifth, as the district court specifically noted in its order, the allegation that this inconsistent testimony and the repeated attacks on the credibility of the defendant benefited my client as opposed to Mr. Nozowitz makes little sense. If anything, the testimony benefited Mr. Nozowitz, right? That's why he used it. That was the entire strategy as articulated in their opening brief. And any one of these factors is grounds for affirming the jury verdict and denying the request for a new trial. But in combination, they are overwhelming. And so when you look at the heavy burden, as well as the three-part test that was set out in the briefing, there is no the same decision, even without that testimony. And for the third factor, Mr. Nozwitz and his attorneys were not taken by surprise. They knew of the alleged falsity or testimony at the actual trial and before, and they were able to deal with it. So under that, they can't meet any of the standards for seeking a new trial or overturning the province of the jury and allowing a valid and impartial jury verdict to stand. And with that, we request you find against Mr. Nozwitz and you affirm the jury verdict. But I'm happy with the limited time I have left to answer any further questions that the court has. Thank you, counsel. Mr. Springer, you have some rebuttal time. In his testimony, Mr. Nozwitz never testified that his ribs were injured by the Thornton police. That was an inference that the defense wanted the jury to draw, but there was no evidence that he complained of a rib injury. And the Thornton police testified that they did not injure him. This is a red herring. They pushed him down, but there's no evidence that they injured his rib. The question of the reasonableness of the force used by Janosko must be judged entirely within the context of his own testimony. His testimony was that Nozwitz turned around and his left arm was free, and that's why he used the armbar takedown. He didn't say that he used it because he felt trapped in the cell. He didn't say he used it for any other reason. And the fact that he testified that the only reason he used this force was that Nozwitz's left arm is free is not objectively reasonable under any standard whatsoever. And that's really the key to this case. Whether the verdict was affected by the perjury of Janosko or Hannah is really secondary. My position is that there was perjury by one or the other because they couldn't both be testifying falsely. With respect to the question of surprise, surprise is immaterial. There was nothing that we could do to meet the fact that one or the other of these witnesses was testifying falsely. One of them was, and there wasn't anything we could do about it. We did all we could to meet Janosko's false denial by having Sgt. Hannah contradict him. But we were not in a position to impeach Sgt. Hannah and didn't want to. He was called for the purpose of contradicting and impeaching Mr. Janosko. Thank you, Mr. Springer. You're now over time, and so I think we should bring things to a conclusion at this point. The case has been argued. Council had a full opportunity in terms of their time, and we will consider the case submitted at this point. Thank you, Council, for your arguments. Council are excused.